IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WEAVER, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,<br><br>   Defendant.         / | No. C 03-1589 SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On August 11, 2006, the Court heard argument on the parties' cross motions for summary judgment. Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court hereby GRANTS plaintiffs' motion and DENIES defendant's motion.

**BACKGROUND**

**A. Factual background**

This case concerns a lawsuit by 70 dual-function, cross-trained firefighter/paramedics (known as "H3s") to recover overtime pay under section 207 of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201-209. Defendant, the City of San Francisco, argues that plaintiffs are exempt from overtime pay because they qualify as "employee[s] in fire protection activities," as defined in 29 U.S.C.A. § 203(y) and exempted in 29 U.S.C.A. § 207(k).

Section 203(y) defines an "employee in fire protection activities" as:

> An employee, including a firefighter [or] paramedic, . . . who –
> (1) is trained in fire suppression, has the legal authority *and responsibility* to *engage in fire suppression*, and is employed by a fire department of a municipality, county, fire district, or State; and

(2) is engaged in the prevention, control, extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C.A. § 203 (emphasis added).

Both parties agree that H3s have been trained in fire suppression, have the legal authority to engage in fire suppression, are employed by a municipal fire department and respond to emergency situations. Joint Case Management Statement & Proposed Order, filed April 27, 2006, at 2. Plaintiffs also concede that H3s are "responsible" for fire suppression, and therefore qualify for the exemption, when they are assigned to work on fire engines.[1] Pls. Motion at 2. Therefore, the sole issue in this case is whether H3s have the "responsibility to engage in fire suppression" when they are assigned to ambulances.[2]

It is undisputed that an Incident Commander at the scene of a fire can and on occasion does order ambulance-assigned H3s to engage in fire suppression activities. Baumgartner Decl. Ex. B, Weaver Dep., at 62; Baumgartner Decl. Ex D, Groothoff Decl. ¶ 8. However, a dispute exists as to how frequently ambulance-assigned H3s actually engage in such activities. The City asserts that plaintiffs regularly engage in fire suppression work. The City offers evidence to suggest that ambulances are sent to most, if not all, fire scenes and that H3s on those ambulances perform some fire suppression work. Baumgartner Decl. Ex. C, Chin Decl. at ¶¶ 4,5; Baumgartner Decl. Ex. A, Interrogs.  In contrast, plaintiffs offer evidence to suggest that ambulances are not sent to every fire call and that, when they are, H3s only rarely engage in fire suppression activities. Watson Decl. ¶¶ 9-12, 15, 32; Baumgartner Decl. Ex. A, Interrogs.

**B.    Procedural background**

In January 2004, the parties filed cross-motions for summary judgment on this same "responsibility" issue. The Court granted the City's motion, holding that plaintiffs were responsible for

---

[1] H3s rotate between assignments on either fire engines or ambulances.

[2] An H3 works 24 hours on shift, then has 48 hours off, then 24 hours on, etc., with the fifth 24-hour shift followed by five days off. Weaver Decl. ¶ 7. Such a schedule would entitle the plaintiffs to overtime pay if they are not exempted under section 207(k). The calculation of precise damages, if any, will be the subject of future proceedings.

2

fire suppression "because they are required to engage in fire suppression if requested to do so by their employer." March 3, 2004 Order at 7. Under this definition, the frequency of actual performance of fire suppression activities was irrelevant. *Id.* at 11. Plaintiffs appealed.

Shortly after this Court's decision, the Ninth Circuit issued a ruling in a similar dual-function firefighter/paramedic case, *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1344 (2006). In *Cleveland*, as in this case, the primary issue was whether ambulance-assigned firefighters/paramedics had the responsibility to engage in fire suppression. Finding in favor of the firefighters/paramedics, the Ninth Circuit held that, in order to have the "responsibility" for fire suppression, plaintiffs "must have some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it." *Cleveland*, 420 F.3d at 990. The court highlighted six facts that supported its conclusion that the plaintiffs did not meet this definition:

> (1) the [Los Angeles] paramedic ambulances do not carry fire-fighting equipment or breathing apparatuses;
> (2) a dispatcher does not know if he or she is sending single or dual function paramedics to a call;
> (3) paramedic ambulances are not regularly dispatched to fire scenes and are dispatched only when there appears to be a need for advanced life support medical services;
> (4) dual function paramedics are not expected to wear fire protective gear;
> (5) dual function paramedics are dispatched to a variety of incidents (e.g., vehicle accidents and crime scenes) at which they are expected to perform only medical services; and
> (6) there is no evidence that a dual function paramedic has ever been ordered to perform fire suppression.

*Id.*

The plaintiffs in *Cleveland*, like the H3s here, were required to engage in fire suppression if requested to do so by their supervisors; the *Cleveland* court held that "responsibility" required more, and that firefighters/paramedics must, at a minimum, actually perform fire suppression work. *See Cleveland*, 420 F.3d at 984; Def.'s Motion, Ex. A., *Cleveland v. Los Angeles* Findings of Fact and Conclusions of Law, ¶25. Since this Court had not addressed the frequency or extent of plaintiffs' actual performance of fire suppression work, the Ninth Circuit reversed and remanded this Court's summary judgment order, with instructions to reconsider the motions in light of *Cleveland*.

3

The Court notes that although the factual record is somewhat limited,[3] both parties stated at oral argument that the record is sufficient for the purpose of deciding the instant motions, and that they did not wish or need to augment it.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

---

[3] Plaintiffs' evidence consists entirely of a declaration made by plaintiff Weaver. The Court, however, previously concluded that the Weaver Declaration should be disregarded on the grounds that it provided certain facts that contradicted Weaver's earlier deposition testimony. *See* March 3, 2004 Order at 11, n.3. Defendant's evidence of the H3s' actual engagement in fire suppression consists of interrogatory responses from 24 of the plaintiffs and Weaver's deposition testimony.

4

## DISCUSSION

**A.  Responsibility for fire suppression activities**

Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them." *Cleveland*, 420 F.3d at 988 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Moreover, "the City has the burden to prove that Plaintiffs meet each element of the § 207(k) exemption for 'employees engaged in fire protection activities' and that the Plaintiffs fit *'plainly and unmistakably'* within the terms and spirit of the exemption." *Cleveland*, 420 F.2d at 988 (emphasis added). One element of the fire protection worker exemption is that the employees must be found to have the "responsibility to engage in fire suppression." 29 U.S.C.A. § 203(y). In order to possess the requisite "responsibility," the plaintiffs "must have some real obligation or duty to [engage in fire suppression]. If a fire occurs, it must be their job to deal with it." *Cleveland*, 420 F.2d at 990. As set forth below, in light of the Ninth Circuit's decision in *Cleveland*, the Court concludes that San Francisco H3s assigned to ambulances are not "responsible" for fire suppression and therefore do not qualify for the overtime exemption.

**1.  The evidence supplied by the City does not support the view that "if a fire occurs," it is the ambulance-assigned H3s' "job to deal with it."**

The City contends that plaintiffs are responsible for fire suppression because some of them have actually performed fire suppression work when assigned to an ambulance. In support of its argument, defendant relies primarily on answers to interrogatories provided by 24 of the plaintiffs.[4] Twelve of the twenty-four respondents indicated that they had, at some point during their career, been directed to perform fire suppression work while assigned to a medic vehicle. Baumgartner Decl., Ex. A, Interrogs. 10 & 11. This fact contrasts with the facts of the *Cleveland* case where the court noted that there was "no evidence that a dual function paramedic has ever been ordered to perform fire suppression." *Cleveland*, 420 F.3d at 990. Defendant also argues that the language of section 203(y) does not qualify

---

[4] Only 24 of the 70 plaintiffs submitted responses to defendant's interrogatories. Defendant did not file a motion to compel responses from the remaining plaintiffs.

5

1 the word "responsibility," and therefore the performance of any amount of fire suppression work, no
2 matter how infrequent or inconsequential, renders H3 ambulance teams "responsible for fire
3 suppression."

4 Plaintiffs argue that they cannot be considered "responsible for fire suppression" because they
5 perform fire suppression work only rarely, and when they do, their activities are only peripheral in
6 nature. The interrogatory answers on which the City relies supports this view. *See, e.g.,* Belot Interrog.
7 No. 11[5] Response ("I was once asked to assist in the laying of large line hose into the interior of a
8 structure. Also instructed to carry a ladder into a fire building. In another instance was instructed by
9 superior to go into a fire scene building 'to see what I could learn'"); *see also* Crawford Interrog. No.
10 11 Response ("Once ordered to advance a back-up hose into a home where a fire had been extinguished
11 by firefighters"); *see also* Fitzsimmons Interrog. No. 11 Response ("Only overhaul (after the fire has
12 been suppressed), usually I am specifically ordered not to, and to stay outside in case there are any
13 injuries"); *see also* McGowan-Faciani Interrog. No. 11 Response ("Mostly limited to assisting outside
14 and occasionally bring in tool and equipment").

15 As noted, defendant bears the burden of establishing that the H3s "plainly and unmistakably"
16 fit within both "the terms and the spirit" of the overtime exemption. *See Cleveland*, 420 F.3d at 988.
17 By relying primarily on the interrogatory answers, defendant does not sufficiently meet this burden.[6]
18 Even the most favorable viewing of the interrogatory responses still suggests that only 50% of the
19 ambulance-assigned H3s occasionally engage in fire suppression activities. This factual record does
20 not demonstrate that it is the job of ambulance-assigned H3s to deal with fires. *See id.* at 990.

21 Defendant's argument that engaging in any amount of fire suppression work satisfies the
22 responsibility element of section 203(y) is also inconsistent with the Ninth Circuit's ruling. *See id.* If
23 ambulance-assigned H3s at the scene of a fire only infrequently engage in fire suppression activities,

---

[5] Interrogatory No. 10 asks: "Have YOU ever been directed to perform fire suppression work while assigned to a medic vehicle?" Interrogatory No. 11 instructs: "If the answer to interrogatory number 10 is yes, DESCRIBE each such instance."

[6] As noted, the City's only other evidence of the actual performance of fire suppression work by the H3s comes from plaintiff Weaver's deposition. In his deposition, Weaver stated that, although he had not performed fire suppression work himself, he had seen other ambulance-assigned H3s engage in such activities. Baumgartner Decl, Ex. B, Weaver Dep., at 82.

they cannot be said to be "unmistakably" responsible for fire suppression when "responsibility" requires a "real obligation or duty" to quell fires. *See id.*

### 2. Although the facts in this case differ from those in *Cleveland*, the policy enunciated in *Cleveland* nonetheless applies.

Defendant also argues that, because there are other differences between the facts in *Cleveland* and the facts in this case, the Court is not compelled to follow *Cleveland*'s decision in favor of the employees. Defendant emphasizes the fact that San Francisco ambulances, unlike L.A. ambulances, contain breathing apparatuses, and H3 paramedics are required to don "turn-out coats" (a type of fire protective gear) when they arrive at a fire scene. Baumgartner Decl. Ex. F, Zanoff Decl., ¶ 3. In addition, because every ambulance is staffed with an H3, dispatchers know that they are sending dual-function paramedics to a call. Finally, the City offers evidence that ambulances are automatically dispatched to every fire scene. Baumgartner Decl. Ex. C, Chin Decl.[7]

The Court finds that while the H3s do not as clearly fail to meet the Ninth Circuit's definition of "responsibility" as their equivalents in L.A., they nonetheless fall short of having the necessary "real obligation or duty" to suppress fires. For example, the fact that twelve of the twenty-four plaintiffs who responded to defendant's interrogatories have never engaged in fire suppression activities outweighs the fact that San Francisco ambulances carry limited fire fighting equipment or that they are automatically dispatched to every fire. In fact, if ambulance teams are dispatched to every fire, it is even more difficult to explain how so many of the plaintiffs could avoid any kind of fire suppression work yet still retain responsibility for putting those fires out.

In short, although the facts in this case differ in some respects from those of *Cleveland*, the Court nonetheless concludes that the defendant has failed to meet its burden of establishing that the plaintiffs are "plainly and unmistakably" responsible for fire suppression.

---

[7] Plaintiffs dispute the contention that ambulances are sent to every fire scene. Plaintiffs' only evidence, however, consists of statements made by Weaver in his inadmissible declaration. *See* Weaver Decl., ¶¶ 9,10. Even assuming defendant is correct that ambulances are sent to every fire scene, the Court still concludes that defendant has failed to meet its burden to show that H3s are "responsible" for fire suppression.

7

### c. Limiting the focus of this case to only those shifts when H3s are assigned to ambulances is proper.

The City also contends that the Court should not limit its analysis to only those shifts when H3s are assigned to ambulances. Rather, the City argues that the Court should focus on all of the duties performed by H3s, including rotations spent on fire engines. In support of its position, defendant relies on a Fifth Circuit case involving firefighters who also spent part of their time working as dispatchers. *See McGovack v. City of Water Valley*, 452 F.3d 423 (5th Cir. 2006). While discussing section 203(y), the Fifth Circuit stated that Congress "intended all emergency medical technicians (EMTs) trained as firefighters and attached to a fire department to be considered employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies." *Id.* at 427.

Defendant's position, however, is inconsistent with the Ninth Circuit's holding in *Cleveland*. In *Cleveland*, as in this case, plaintiffs rotated between assignments on ambulances and fire engines. *Cleveland*, 420 F.3d at 983-84. The plaintiffs in *Cleveland* likewise conceded that they were properly exempted under section 207(k) when assigned to fire engines. *Id.* at 988 n.9. Therefore, the Ninth Circuit's holding in *Cleveland* specifically applied to only those periods when the dual-function paramedics were assigned to ambulances. *Id.* at 984, 988 n.9.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for summary judgment and DENIES defendant's motion. (Docket Nos. 131 & 132).

**IT IS SO ORDERED.**

Dated: August 18, 2006

SUSAN ILLSTON  
United States District Judge